## THE ALBERT H. ELLIS.

### THE HUDSON CITY.

#### (Circuit Court of Appeals, Second Circuit. March 12, 1901.)

#### No. 105.

COLLISION—SUBSEQUENT NEGLIGENCE OF INJURED VESSEL.

In an action for collision, it appeared that a ferryboat struck a scow in tow on the forward end, which projected with an overhang. The collision was the fault of the ferryboat. The man on the tug examined her at the time with a lantern, it being after dark, and the scow being heavily laden and deep in the water. He discovered no apparent damage, and the tow proceeded. When some distance from the place of collision, the scow sank. An inspection after she was raised showed injury below the water line. *Held* insufficient to show negligence on the part of the tow in continuing on the voyage, so as to relieve the ferryboat from the consequences of the collision.

Appeal from the District Court of the United States for the Eastern District of New York.

This cause comes here upon appeal from a decree of the district court, Eastern district of New York, holding the Hudson City solely at fault for collision with libelant's scow in tow of the tug, and condemning her for the damage to the scow, being $5,722.96. Upon this appeal it is not contended that there was any error in the findings of the district court as to the navigation which ended in collision, or in the conclusion that the Hudson City was solely in fault for such collision. The collision took place off Desbrosses street, North river, the ferry boat, bows on, striking the scow a severe blow on the forward end, which projected with an overhang. This took place between 6 and 7 o'clock p. m., the tug, towing two scows loaded with mud, being bound for the dumping buoy outside the harbor. The flotilla proceeded on its way, and about an hour after collision, when some distance south of Castle William, between the bell buoy and Governor's Island, the scow sank. When she was raised and put into the hands of the repairers, it appeared that a large part of the damage requiring attention had apparently been produced by some vessel running over her while she lay on the bottom. The appellant contends that it should not be held to respond for such damage, which it insists was not proximately caused by the collision, but was due to the negligence of those in charge of the tug or tow, or both.

Charles M. Hough, for appellant.
Harrington Putnam, for the Ellis.
Albert A. Wray, for libelant.

Before WALLACE and LACOMBE, Circuit Judges.

PER CURIAM. The answer of the Hudson City alleges:

"Seventh. And for a further and independent defense the claimant avers that, if the libelant's scow was injured as claimed in the libel, there is no reason why, by proper vigilance and care, she should not have been kept free of water or taken to a place of safety before she sank."

This point is not discussed, either in the opinion of the district judge or in the report of the commissioner.

The Ellis had two scows in tow, the libelant's, No. 15, on a hawser, with 35 to 40 fathoms out, and the other, No. 17, astern of No. 15, on a short hawser of about 15 feet. There was a man assigned to each scow. At the moment of collision, Davis, the man assigned to No. 15, was on No. 17. He at once went aboard No. 15, took a lantern from the after bitt, and with its assistance walked around and looked to see if there was any injury. He perceived none; saw "no timbers broke up to the deck; none of the deck timbers seemed to be sprung up." Meanwhile the Ellis had hauled the scow up to within 15 fathoms, and her master hailed to know if there was any damage, to which Davis replied, "All right;" whereupon the tug proceeded on her course. It is true that Davis did not go clear to the forward edge of the scow, and lean over to make an inspection below the water line, but from the description of the wound inflicted we are not satisfied that, had he done so, he would have made any discovery which would have called for a prompt return to shoal water. As stated before, the scow was heavily laden and deep in the water. It was dark, her wound was below the level of the water, and her end overhung. Presumably Davis could not have seen the leak. Two witnesses who saw the scow after she was raised give conflicting descriptions of the appearance of the collision wound. One of them (Shewan) says that the bumper log (the biggest log in the scow, that goes across the end, and forms a part of the end and a part of the deck) was cracked, and that below it her bow planks were shoved in and broken right off. The timbers and everything else went right in, and left a large hole, six inches by two or three feet. This story seems incredible. With a hole like that below the water line at the forward end, the scow would not have floated long enough to get out of the North river. The other (Bullis) apparently made a more careful examination. He made measurements, and prepared a diagram, to which he testified. He says: "We saw at the bow of her there was one butt with a plank started off, sprung off about four inches,—a plank, 6x10,—and there were five others that were cracked, but not broken through; and her bumper was cracked, not shoved back." The planking was broken, but there was no hole at all. She would, however, make water near the butt that sprung off, enough to sink her in time. The record falls short of making out a case of such negligence in continuing on the voyage as would relieve a conceded wrong-doing from the natural consequences of the collision.

It is further contended by appellant that the damages sustained while lying on the bottom were due to faults of the owner or of the tug in failing to buoy, watch, or mark the wreck. There is no such charge of fault in the pleadings, and evidently none of the testimony was directed to any such issue. In consequence, the record is barren of information which might be helpful towards a conclusion. The point need not be considered here. The decree of the district court is affirmed, with interest, and a single bill of costs against appellant, to be divided between appellees.